1
2
3
4
5
6
7
8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DERRICK LEE BILLUPS,

11           Petitioner,                No. CIV S-05-0177 FCD CHS P

12       vs.

13   MATTHEW C. KRAMER, et al.,

14           Respondents.        FINDINGS AND RECOMMENDATIONS

15   _____/

16           Petitioner Derrick Lee Billups is a state prisoner proceeding pro se with a petition

17   for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner claims that prison staff

18   retaliated against him by issuing multiple false disciplinary reports.  Petitioner claims these

19   actions violated his right to due process and his First Amendment rights.  Upon careful

20   consideration of the record and the applicable law, it is recommend that his petition for habeas

21   corpus relief be denied.

22                   FACTUAL AND PROCEDURAL BACKGROUND

23           On March 11, 2003, petitioner filed an inmate appeal form against Correctional

24   Officer Douglas.  Petition at 31.  On March 12, 2003 Officer Douglas filed a California

25   Department of Corrections ("CDC") 115 disciplinary report alleging petitioner had evaded work.

26   Answer, Ex. B. at 2.  Petitioner claims that he was granted "S" time credits for an authorized

                                          1

medical appointment during this time.  Petition at 8.  Additionally, petitioner claims that on

March 27, 2003, he had a "medical ducat" for a medical visit and that Officer Douglas again

issued him a CDC 115 Disciplinary Report for evading work.  Id. at 9.  Petitioner claims the

motive for Officer Douglas' false disciplinary reports was to retaliate against him for filing the

March 11, 2003 appeal, which reported that officer Douglas was involved in "illegal sexual

misconduct and behavior with inmates during work hours."[1]  Petition at 9.

       According to Officer Douglas, on March 12, 2003, petitioner was released from

his job assignment at 0840 hours to see Doctor L. Allen.  Answer, Exhibit B at 2.  At

approximately 0950 hours, Officer Douglas went to Doctor Allen's office to check on

petitioner's whereabouts.  Id.  Dr. Allen informed Officer Douglas that Dr. Allen had released

petitioner at approximately 0920 hours.  Id.  After a search, at 1005 hours, Officer Douglas

paged petitioner to report to Building #5.  Id.  After approximately 5 minutes, petitioner reported

and claimed that Dr. Allen had asked petitioner to get additional information from CCI Guthrey.

Id.  Officer Douglas questioned Dr. Allen about this, and Dr. Allen denied sending petitioner to

see any state employee, stating that after her exam she released him to work.  Id.

       As a result of the March 12 disciplinary report, a hearing was held on April 12,

2003 at 1025 hours.  Id.  Petitioner was present and acknowledged receiving "all charges and all

pertinent and non-confidential reports relative to the charges at least 24 hours prior to the

hearing."  Id.  The hearing officer read the charges to petitioner, petitioner pled not guilty and

gave his version of events.  Id.  Petitioner also called Inmate Wilson to testify.  Id.  Inmate

Wilson testified that he saw Dr. Allen at 0930 hours and did not know when petitioner saw Dr.

Allen.  Id.  Petitioner also submitted written questions to Officer Whitman and Dr. Allen, and

those responses were accepted in lieu of testimony.  Id.  In responding to petitioner's specific

---

[1] It appears that in September of 2003, an Inmate Jacobo filed a report of inappropriate sexual behavior against Officer Douglas, which led to an investigation partially sustaining the allegation.  Answer, Exhibit H. at 10.  However, it is unclear what petitioner's involvement was.  Nonetheless, Officer Douglas' guilt would not alter this report.

1  question of whether Dr. Allen had requested petitioner do anything after he was released, Dr.

2  Allen answered "no."  <u>Id.</u>  Dr. Allen went on to state that she never gave petitioner instructions

3  to seek any other information.  <u>Id.</u> at 4.

4         On this same date another hearing was held at 1500 hours concerning the March

5  27, 2003 Rules Violation Report, in which Officer Douglas claimed that petitioner failed to

6  report to work on that date.  Answer, Ex. D  at 2.  Petitioner was present and acknowledged

7  receiving "all charges and all pertinent and non-confidential reports relative to the charges at

8  least 24 hours prior to the hearing."  <u>Id.</u>  The hearing officer read the charges to petitioner,

9  petitioner pled not guilty and gave his version of events.  <u>Id.</u>  Petitioner claimed that he wasn't

10 released for morning chow until after Officer Douglas noted he had not reported to work.  <u>Id.</u>

11        At the conclusion of these hearings, petitioner was found guilty of evading work

12 on March 12, 2003 and March 27, 2003.  Answer, Ex. B at 4 and Ex. D at 3.  Petitioner was

13 assessed loss of 30-days of good time credits and 30 days of privileges.  Answer, Ex. B at 5 and

14 Ex. D at 4.

15        After exhausting his administrative remedies, petitioner petitioned the Tuolumne

16 County Superior Court on November 18, 2003.  Answer, Ex. G., Part I at 14.  On November 24,

17 2003, that court found the petitioner's finding of guilt was "supported by some evidence in the

18 record" and upheld the ruling.  <u>Id.</u>  Petitioner then petitioned the California Court of Appeal,

19 which denied that petition on December 11, 2003.  <u>Id.</u> at 16.  On December 18, 2003, petitioner

20 petitioned the California Supreme Court.  <u>Id.</u> at 3.  That petition was denied on October 13,

21 2004.  Petitioner then filed this petition on January 27, 2005.

22                              ANALYSIS

23 A.    <u>Standards of Review Applicable to Habeas Corpus Claims</u>

24        A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

25 some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860,

26 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v.</u>

Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

(1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall
> not be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  The

court looks to the last reasoned state court decision as the basis for the state court judgment.

Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

B.    Petitioner's Claims

1)    Due Process

Petitioner claims that Officer Douglas' false reports violated petitioner's due

process rights.  Petition at 4.  Though the specifics of petitioner's claim are not entirely clear, he

appears to claim in part that the failure of prison staff to conduct a sufficient investigation of the

incidents, the failure to grant him staff assistance and the taking of good time credits, violated his

4

1  right to due process.

2        The Due Process Clause of the Fourteenth Amendment prohibits state action that

3  deprives a person of life, liberty, or property without due process of law.  A person alleging a

4  violation of the right to due process must establish that he was deprived of an interest cognizable

5  under the Due Process Clause and that the procedures attendant upon that deprivation were not

6  constitutionally sufficient.  <u>See</u> <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 459-

7  60 (1989); <u>Board of Regents v. Roth</u>, 408 U.S. 564, 571 (1972).  A protected liberty interest may

8  arise under either the due process clause itself or a state statute or regulation.  <u>Kentucky Dep't of

9  Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989); <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983).

10  Petitioner does not have a protected liberty interest in behavioral credits or loss of privileges

11  under the due process clause itself.  <u>See</u> <u>Sandin v. Connor</u>, 515 U.S. 472,  478-79 (1995); <u>Wolff

12  v. McDonnell</u>, 418 U.S. 539, 557 (1974).  Thus, he must show that his liberty interest arises

13  under state law.

14        A liberty interest arises under state law when an inmate is subjected to restrictions

15  that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents

16  of prison life."  <u>Sandin</u>, 515 U.S. at 484.  The loss of credits "inevitably affect[s] the

17  duration of [petitioner's] sentence."  <u>See id.</u> at 487.  The loss of credits therefore involves a right

18  of "real substance," which implicates petitioner's liberty interest under the due process clause.

19  <u>See</u> <u>Gotcher v. Wood</u>, 66 F.3d 1097, 1100 (9th Cir. 1995), <u>vacated and remanded on other

20  grounds</u>, 520 U.S. 1238 (1997) (loss of good time credits implicates a liberty interest under

21  <u>Sandin</u>); <u>see also</u> <u>Wolff</u>, 418 U.S. at 557 (a prisoner's interest in good time credit had "real

22  substance" and thus entitled him to the protection of the due process clause); Cal. Penal Code §

23  2932(a) (providing that credits may be forfeited if a prisoner is found guilty of a serious act of

24  misconduct); Cal. Code Regs. tit. 15, § 3323 (same).

25        It is well established that inmates subjected to disciplinary action are entitled to

26  certain procedural protections under the Due Process Clause but are not entitled to the full

panoply of rights afforded to criminal defendants.  <u>Wolff</u>, 418 U.S. at 556; <u>see also</u>

<u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56 (1985); <u>United States v. Segal</u>, 549 F.2d 1293,

1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least

amount of due process along the prosecution continuum).  An inmate is entitled to advance

written notice of the charge against him as well as a written statement of the evidence relied

upon by prison officials and the reasons for any disciplinary action taken.  <u>See</u> <u>Wolff</u>, 418 U.S. at

563.  In the disciplinary hearing context, an inmate does not have a right to counsel, retained or

appointed, although illiterate inmates are entitled to assistance.  <u>Id.</u> at 570.

An inmate has a right to a hearing at which he may "call witnesses and present

documentary evidence in his defense when permitting him to do so will not be unduly hazardous

to institutional safety or correctional goals."  <u>Wolff</u>, 418 U.S. at 566. <u>See</u> <u>also</u> <u>Ponte v. Real</u>, 471

U.S. 491, 495 (1984).  The right to call witnesses is subject to the "mutual accommodation

between institutional needs and objectives and the provisions of the Constitution."  <u>Baxter v.</u>

<u>Palmigiano</u>, 425 U.S. 308, 321 (1976) (citing <u>Wolff</u>, 418 U.S. at 556).  <u>See also</u> <u>Serrano v.</u>

<u>Francis</u>, 345 F.3d 1071, 1077 (9th Cir. 2003); <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1271 (9th Cir.

1989). "Prison officials must have the necessary discretion to keep the hearing within reasonable

limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as

well as to limit access to other inmates to collect statements or to compile other documentary

evidence."  <u>Wolff</u>, 418 U.S. at 566.  Prison officials may, but are not required to, explain their

reasons limiting an inmate's efforts to defend himself.  <u>Ponte</u>, 471 U.S. at 497.  Should prison

officials refuse to call a witness, they should explain their reasons in disciplinary proceedings or

later in court proceedings.  <u>Id.</u>  <u>See also</u> <u>Bostic</u>, 884 F.2d at 1274 (burden is on prison officials to

provide justifications for refusal).  So long as those reasons "are logically related to preventing

undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due

process requirements as outlined in <u>Wolff</u>."  <u>Ponte</u>, 471 U.S. at 497.  However, as a general rule,

inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison

1   disciplinary hearings.  Id. at 510 (Marshall, J., dissenting).

2          The decision rendered on a disciplinary charge must be supported by "some

3   evidence" in the record.  Hill, 472 U.S. at 455.  A finding of guilt cannot be "without support" or

4   "arbitrary."  Id. at 457.  The "some evidence" standard is "minimally stringent," and a decision

5   must be upheld if there is any reliable evidence in the record that could support the conclusion

6   reached by the fact finder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472

7   U.S. at 455-56 and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  See also Barnsworth v.

8   Gunderson, 179 F.3d 771, 773 (9th Cir. 1990);  Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th

9   Cir. 1987).  Determining whether this standard is satisfied does not require examination of the

10  entire record, independent assessment of the credibility of witnesses, or the weighing of

11  evidence.  Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  Indeed, in examining

12  the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh

13  the evidence.  Hill, 472 U.S. at 455.  The question is whether there is any reliable evidence in the

14  record that could support the decision reached.  Toussaint, 801 F.2d at 1105.

15         Where a protected liberty interest exists, the requirements imposed by the Due

16  Process Clause are "dependent upon the particular situation being examined."  Hewitt, 459 U.S.

17  at 472.  The process due is such procedural protection as may be "necessary to ensure that the

18  decision . . . is neither arbitrary nor erroneous."  Washington v. Harper, 494 U.S. 210, 228

19  (1990).  In identifying the safeguards required in the context of disciplinary proceedings, courts

20  must remember "the legitimate institutional needs of assuring the safety of inmates and

21  prisoners" and avoid "burdensome administrative requirements that might be susceptible to

22  manipulation."  Hill, 472 U.S. at 454-55.  The requirements of due process in the prison context

23  involve a balancing of inmate rights and institutional security concerns and broad discretion

24  must be accorded to prison officials.  Wolff, 418 U.S. at 560-63.

25         It is apparent that petitioner received all the process that was due in connection

26  with the disciplinary hearings at issue.  Review of the record, specifically Exhibit B at 2-5 and

7

1    Exhibit D at 2-3 to Respondent's Answer, reveals that petitioner received advance written notice

2    of the charges against him as well as a written statement of the evidence relied upon by prison

3    officials and the reasons for the disciplinary action taken.  See Wolff, 418 U.S. at 563.  Petitioner

4    was allowed to present evidence in his defense, including the testimony of inmate Wilson and

5    Doctor Allen.  See Answer, Ex. B. at 2-5.  The findings of the disciplinary board were supported

6    by "some evidence" that carried "indicia of reliability."  Specifically, petitioner was convicted

7    based on the testimony of Officer Douglas, Doctor Allen, inmate Wilson and CCI Guthery.

8             Petitioner has failed to demonstrate that his right to due process was violated by

9    procedures of the disciplinary hearing or the resulting loss of good time credits.

10           2)    First Amendment

11           Petitioner also claims that his First Amendment rights were violated by Officer

12   Douglas' harassment and retaliation against him for filing an appeal against Officer Douglas and

13   reporting alleged sexual misconduct.  Petition at 9.

14           The right to petition the government for a redress of grievances is a right

15   protected by the First Amendment.  The right has been broadly construed to include "a person's

16   right to seek redress from all branches of government."  Franco v. Kelly, 854 F.2d 584, 585-86

17   (2d Cir. 1988).  Prison inmates are entitled to access to both administrative and judicial forums

18   to seek redress of grievances against state officials.  Hines v. Gomez, 853 F.Supp. 329, 331

19   (N.D.Cal. 1994) (quoting Franco at 585-86).

20           Courts have held that inmates have a right to be free from the filing of false

21   disciplinary charges in retaliation for the exercise of constitutionally protected rights.  Jones v.

22   Coughlin, 45 F.3d 677, 679-80 (2nd Cir. 1995) ("At the doctrinal level, we have held that a

23   prisoner has a substantive due process right not to be subjected to false misconduct charges as

24   retaliation for his exercise of a constitutional right such as petitioning the government for a

25   redress of his grievances.");  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989);  Cale v.

26   Johnson, 861 F.2d 943 (6th Cir. 1988);  see also Wood v. Smith, 60 F.3d 1161, 1164 (5th Cir.

8

1  1995) (inmate may state a constitutional claim based on allegations of filing false disciplinary

2  reports in retaliation for exercising right of access to the courts without first establishing that the

3  disciplinary proceedings were terminated in inmate's favor), petition for certiorari filed, (U.S.

4  November 9, 1995).

5          Under this line of cases, substantive due process protection does not arise unless

6  there is a false disciplinary report issued in retaliation for the exercise of a constitutionally

7  protected right. Wood, 60 F.3d at 1165 n.16.

8          The Court of Appeals for the Ninth Circuit has addressed the elements of a

9  retaliation claim.  Retaliation is found where petitioner demonstrates that he engaged in

10 protected conduct and that retaliation for the exercise of protected conduct was the "substantial"

11 or "motivating" factor behind the retaliator's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874

12 F.2d 1310, 1314 (9th Cir. 1989).  In the context of a retaliation claim brought by an inmate, the

13 petitioner must also demonstrate an absence of legitimate correctional goals for the conduct he

14 contends was retaliatory.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (citing Rizzo v.

15 Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

16         Officer Douglas issued the March 12, 2003 and March 27, 2003 Rules Violation

17 Reports because he could not locate petitioner and believed him to be evading his work

18 assignment.  Not knowing a prisoner's whereabouts and ensuring that prisoners perform their

19 work assignments raise concerns of internal order, discipline, security and rehabilitation, which

20 are legitimate correctional goals.  Id.

21         The conduct petitioner contends was retaliatory was in pursuit of legitimate

22 correctional goals, and petitioner therefore cannot demonstrate retaliation.  He is not entitled to

23 relief on this claim.

24                                  CONCLUSION

25         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a

26 writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 23, 2008

*Charlene H. Sorrentino*

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

10